IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

GERBER PRODUCTS COMPANY                                           PLAINTIFF

v.                                            No. 4:19-cv-33

MITCHELL WILLIAMS SELIG
GATES &. WOODYARD PLLC, *et al*                                 DEFENDANTS

<u>ORDER</u>

Pending are four motions filed by Defendants in this legal malpractice case: a motion for summary judgment, a motion for reconsideration, a motion in limine, and a motion for leave to file an amended answer and counterclaim. (Doc. Nos. 11, 29, 32, and 44). All are ripe for consideration.

I. <u>Motion for Summary Judgment and Motion for Reconsideration</u>

Defendants move for summary judgment on two grounds: one, the malpractice claim is barred by the statute of limitation; and, two, Plaintiff cannot prove Defendants' negligence was the proximate cause of its damages. Summary judgment is appropriate only when the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the defendant is entitled to entry of judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex.*, at 323. If that burden is met, the nonmoving party must do more than rely on allegations or denials in the pleadings, and the court should grant summary judgment if any essential element of the prima facie case is not supported by specific facts sufficient to raise a genuine issue for trial. *Register v. Honeywell Fed. Mfg. & Techs., LLC.*, 397 F.3d 1130, 1136 (8th Cir. 2005) (citing *Celotex* at 324).

The Underlying Action

This malpractice action stems from a case filed in the Circuit Court of Sebastian County, Arkansas by Vee-Jay Cement Contracting Company, Inc. (Vee-Jay) against CECO Concrete Construction, LLC (CECO), Alberici Constructors, Inc. (Alberici), and Gerber Products Company (Gerber) (Case No. CV-2012-435) (the "underlying action"). Gerber retained the law firm of Mitchell, Williams, Selig, Gates & Woodyard, PLLC to represent it in that action; Byron Freeland is a member of that firm (collectively Defendants will be referred to as "the Mitchell firm"). At some point, the plaintiff's claim was resolved and dismissed, but cross-claims remained among the defendants.

During the course of discovery in the underlying action, Alberici propounded requests for production of documents (RFPs) to Gerber in January of 2013; Gerber served its responses in February of 2013. Shortly thereafter, counsel for CECO emailed Freeland to tell him that he believed that some of the documents Gerber had produced may be privileged. The Mitchell firm confirmed that some of the documents that had been produced were privileged, and CECO returned the privileged documents. The Mitchell firm stated that it would work on a privilege log. In April of 2013, CECO served RFPs on Gerber; Gerber responded to this discovery in May of 2013. In responding to both Alberici and CECO's RFPs, the Mitchell firm did not make any objections to the requested material and simply responded "See documents provided on enclosed diskettes."

On May 6, 2013, not satisfied with Gerber's February responses, Alberici filed a motion to compel discovery. CECO joined the motion on June 6, 2013 and filed its own motion to compel. After a hearing, the circuit court granted the motions on July 12, 2013, ordering Gerber to respond to the RFPs as written since it had not raised any objections to them.

After reviewing the approximately 96,000 additional pages produced by Gerber, CECO filed a second set of RFPs in June 2015.  In response, Gerber provided thousands more pages of documents and on July 23, 2015, an eight-page privilege log.  This prompted CECO to file a second motion to compel in October 2015, arguing among other issues that the responses to the second set of RFPs were incomplete and pointing out that, again, Gerber had not filed any objections to the RFPs. The circuit court granted the second motion to compel in January of 2016 and imposed sanctions against Gerber.

In February 2016, Gerber produced an additional 18,000 pages of documents and a 13-page second privilege log.  This privilege log listed some documents that had not been listed on the first privilege log.  In March 2016, CECO sent a letter to Gerber asserting that Gerber had waived its claim of privilege by waiting too long to assert it and that some of the documents listed as privileged in the second log had already been produced during the course of discovery without objection.

On February 11, 2016, Gerber filed a motion for protective order to govern the production of confidential information, including both documents that it had already produced and documents it had yet to produce. On March 25, 2016, the Mitchell firm was relieved as counsel for Gerber in the underlying action.

In July 2016, Gerber, now with new counsel, filed a motion for protective order asking for the return of privileged documents that had been previously produced while the Mitchell firm was on the case.  The motion also sought to protect documents not yet produced that were identified on the two privilege logs. The circuit court denied the motion, and Gerber filed an interlocutory appeal of the denial.

On appeal, the Arkansas Court of Appeals addressed two questions: (1) whether the circuit court erred in holding that Gerber had waived its right to assert attorney-client and work-product privilege as to documents it had yet to produce and (2) whether the circuit court erred in refusing to allow the retrieval or destruction of the privileged documents Gerber had already inadvertently produced. *Gerber Prod. Co. v. CECO Concrete Constr., LLC*, 533 S.W.3d 139 (Ark. App. 2017). As to the documents not yet produced, the court held that the circuit judge had not abused his discretion in finding that Gerber waived all objections to the RFP by failure to object in a timely fashion. Specifically, the court noted:

> Here, it is beyond dispute that Gerber did not make a privilege objection or ask for a protective order in its 2013 response to the first set of RFPs; in fact, Gerber did not make any cognizable claim of privilege until its privilege logs were provided to CECO in July 2015 and February 2016. By any standards, Gerber's claims of attorney-client and work-product privileges were woefully overdue at that point.

*Id*. at 144. In upholding the circuit court's decision, the Court of Appeals considered "the overall circumstances of the case," including Gerber's "general lack of compliance" which "exacerbated" Gerber's untimely claims of privilege. *Id.* at 144-145.[1] As to the documents inadvertently produced by Gerber, the Court of Appeals again found that the circuit court was within its discretion in finding that Gerber's "lack of precautions to prevent inadvertent disclosures" had led to a waiver" of Gerber's claims of privilege.[2] *Id*. at 145.

The underlying action was still pending at the time this malpractice action was filed on January 15, 2019 and when the Mitchell firm filed its motion for summary judgment. After the

---

[1] The court also clarified that the circuit court's ruling was not based on "broad-subject-matter waiver" and declined to consider Gerber's argument on that issue.

[2] The court emphasized that "the series of events throughout the parties' multiyear history of discovery demonstrates a pattern by Gerber of providing large numbers of documents without objection and without sufficient and diligent screening for privileged materials." *Id.* at 145.

motion for summary judgment was ripe, the Court, via staff, sent an email to counsel on January 27, 2020 indicating a potential ruling that would grant the motion for summary judgment in part and deny it in part. On February 4, 2020, the Court held a conference call at which the parties agreed to participate in a settlement conference and to notify the Court when they were ready to do so; there would be no written order on the motion for summary judgment until after the settlement conference. A jury trial was held in the underlying action in February of 2020.[3] Shortly thereafter, on March 11, 2020, the Mitchell firm filed a Motion for Reconsideration[4] in this action challenging the Court's informal email ruling on its motion for summary judgment. Subsequently, the parties participated in a settlement conference before Magistrate Judge Jerome T. Kearney. The parties were unable to reach a settlement, putting both the motion for summary judgment and the motion for reconsideration back before this Court for determination. Since no formal order was entered as to the motion for summary judgment, the Court will consider both motions together, treating the filings related to the motion for reconsideration as supplements to the parties' original summary judgment arguments.

## Statute of Limitations

The statute of limitations for legal malpractice actions is three years. Ark. Code Ann. § 16-56-105; *Moix-McNutt v. Brown*, 74 S.W.3d 612 (Ark. 2002). The three years begins to run on the date of the occurrence of the negligent act. *Brown*, 74 S.W.3d at 613. This action was filed on January 15, 2019. Therefore, only acts of negligence that occurred between January 15, 2016 and March 25, 2016 (the date the Mitchell firm was relieved as counsel) can be the basis

---

[3] The Court has been advised that a verdict was entered against Gerber in the amount of $1,894,356, but the jury also awarded damages to Gerber in the amount of $1,276,265; no further specifics are known to the Court.

[4] Doc. No. 29.

for Gerber's claim of legal malpractice.

The Mitchell firm argues that the decision of the Arkansas Court of Appeals on the discovery issues adjudicated the fact that its act of negligence occurred in 2013, and that because Gerber initiated the appeal and was a party to it, the doctrine of collateral estoppel "bind[s] Gerber to the findings of the Court of Appeals regarding the waiver occurring in the year 2013."[5] (Doc. 13, p. 7). Gerber argues that the Mitchell firm committed separate acts of negligence in February of 2016 that are not barred by the statute of limitations. Gerber points to the Mitchell firm's failure to assert objections in discovery responses on February 12, 2016, its production of privileged documents on February 12, 2016, and its submission of a privilege log that listed documents already produced on or about February 12, 2016. (Doc. No. 17, p. 5 and Doc. No. 16-3).

Since this Court's jurisdiction is based on diversity, Arkansas law applies to the issue of collateral estoppel. The following four elements must be proven before the doctrine of collateral estoppel applies to bind a party to a determination in a prior proceeding: "(1) the issue sought to be precluded must be the same as that involved in the prior litigation; (2) that issue must have been actually litigated; (3) the issue must have been determined by a valid and final judgment; and (4) the determination must have been essential to the judgment." *State Office of Child Support Enforcement v. Willis*, 347 Ark. 6, 59 S.W.3d 438 (2001).

The issue before the Court of Appeals in the underlying action was whether the trial court had abused its discretion in denying Gerber's motion for protective order and requiring it to

---

[5] The Mitchell firm references the doctrines of res judicata and collateral estoppel, the latter being the claim preclusion "facet" of res judicata; it does not argue the issue preclusion. *See Mason v. State*, 206 S.W.3d 869 (Ark. 2005).

produce documents that it had withheld based on a claim of privilege. Also before the court was whether the trial court had abused its discretion when it refused to require CECO and Alberici to return or destroy privileged documents it had already produced. The issue currently before this Court is whether the Mitchell firm failed to exercise diligence and skill on behalf of Gerber between January 15, 2016 and March 25, 2016. The issues are not the same. While the Court of Appeals certainly discussed multiple actions taken or not taken by the Mitchell firm during the course of discovery in the underlying action, starting in 2013, that could be the basis of a malpractice case, the Mitchell firm's negligence was not adjudicated. Furthermore, the appeal was interlocutory pursuant to Rule 2(f) of the Arkansas Rules of Appellate Procedure; it did not result in a final judgment. The Court of Appeal's finding that the circuit court did not abuse its discretion regarding discovery matters was not essential to the judgment eventually entered in the underlying action. The opinion by the Arkansas Court of Appeals does not establish that the Mitchell firm is entitled to summary judgment based on the statute of limitations.

There are genuine issues of material fact regarding the dates of occurrence of the Mitchell firm's alleged negligence. Therefore, the Mitchell firm's motion for summary judgment on the basis of the statute of limitations is denied.

Proximate Cause and Damages

To prevail in a legal malpractice claim, a plaintiff must prove that "the attorney's conduct fell below the generally accepted standard of practice and that such conduct proximately caused the plaintiff damage." *Evans v. Hamby*, 378 S.W.3d 723, 727 (Ark. 2011). Proof of proximate cause requires a plaintiff to show that "but for the negligence of the attorney, the result in the underlying action would have been different." *Barnes v. Everett*, 95 S.W.3d 740, 744 (Ark. 2003) (internal citations omitted). Causation is normally, but not always, a fact question for the

jury. *Stecker v. First Commercial Trust*, 962 S.W.2d 792, 796 (Ark. 1998). It only becomes a question of law if reasonable minds could not differ. *Craig v. Traylor*, 915 S.W.2d 257, 260 (Ark. 1996) (overruled on other grounds).

In its motion for summary judgment on this issue, the Mitchell firm relies on the complaint filed in this action and Gerber's responses to discovery to establish that, as a matter of law, Gerber has no proof of causation. In its complaint, filed before the underlying action had concluded, Gerber alleged damages for the attorneys' fees it incurred when it hired new counsel and "attempt[ed] to assert the objections based upon attorney-client privilege and work product and to obtain the return of privileged documents which defendants produced." (Doc. No. 1, p. 3). Gerber also stated "[a]dditionally, while the underlying litigation has not been concluded, it is probable that the production of the privileged documents will adversely [affect] the outcome of that litigation." *Id*. In response to discovery asking Gerber to identify "each specific document which you contend was subject to 'attorney-client privilege and work product doctrine' and which has proximately caused damage to plaintiff regarding the outcome in the underlying action," Gerber stated that it was not currently able to respond to this interrogatory because the underlying action had not yet concluded. (Doc. No. 11-5, p. 10).

Since the conclusion of the underlying action in February of 2020, Gerber has not filed an amended complaint clarifying its claim for damages nor does the record contain any evidence of any supplemental discovery on this issue. In its response to the Mitchell firm's motion for reconsideration, Gerber does not put forth any evidence or argument to establish that but for the Mitchell firm's alleged negligence in February of 2016, the results in the underlying action would have been different. In the absence of such evidence, Gerber cannot establish proximate cause under Arkansas law, and the Mitchell firm is entitled to summary judgment on the claims

against it.

Gerber argues that it is has established that the Mitchell firm's negligence proximately caused its damages in the form of the attorneys' fees it paid to its replacement counsel for "attempting to remedy the defendants' breach of the standard of care . . . as a result of the defendants' failure to assert privilege in February, 2016." (Doc. No. 47, p. 5). Even assuming that but for the Mitchell firm's mishandling of discovery responses, privileged documents would not have been turned over and Gerber would not have felt compelled to hire new counsel in an attempt to mitigate any harm caused by the production of privileged documents—Gerber has not met its burden of proof to establish proximate cause in a legal malpractice claim.

Gerber relies on *Liles v. Liles*, 711 S.W.2d 447 (Ark. 1986) as authority for the argument that it is entitled to damages in the form attorneys' fees incurred when a new attorney is hired to fix the errors of a previous attorney. *Liles* was a divorce action in which Ms. Liles sued her ex-husband and his attorney, Dave Herrod, to set aside the property settlement agreement those two had improperly induced her to sign; she also sought to recover her attorney's fees and expenses incurred in the action. The Arkansas Supreme Court affirmed the decision of the chancellor setting aside the property settlement agreement and awarding compensatory damages "in an amount equal to her attorney's fees costs and expenses in litigating this action," damages it found were proximately caused by Mr. Lile and his attorney's "conspiratorial and fraudulent acts." *Liles* was not a legal malpractice action and, consequently, does not support Gerber's claims for fees absent a showing that the result in the underlying action would have been different but for the Mitchell firm's negligent actions.

In the absence of any Arkansas law to advance its argument, Gerber relies on case law

from other jurisdictions to support its claim for the "corrective fees" [6] it incurred. Several of the cases Gerber relies on do not involve negligence occurring in the course of litigation: *Callahan v. Gibson, Dunn & Crutcher LLP*, 125 Cal. Rptr. 3d 120 (Cal. App. 2011) (attorney's negligent drafting of a family partnership agreement led to litigation against clients); *Gefre v. Davis Wright Tremaine, LLP*, 306 P.3d 1264 (Alaska 2013) (attorney's negligence in a corporate matter led to litigation against client); *Larson v. Norkot Mfg., Inc.*, 653 N.W.2d 33 (ND 2002) (attorney was negligent in not including an indemnity provision in a sales contract that caused client to incur damages in subsequent litigation); *John Kohl & Co. P.C. v. Dearborn & Ewing*, 977 S.W.2d 528 (Tenn. 1998) (client was awarded legal fees incurred in hiring new counsel to correct the negligent attorney's errors in drafting and administering the company's profit-sharing plan and in giving incorrect legal advice); *Sorenson v. Fio Rito,* 413 N.E.2d 47 (Ill. App. 1980) (attorney failed to timely file certain inheritance and estate tax forms for the client requiring client to pay penalties and interest). These cases are not instructive to the case at hand.

Gerber does cite to three legal malpractice actions from other jurisdictions arising out of negligence occurring in the course of litigation. In the New York case of *Leach v. Bailly*, 57 A.D.3d 1286, 870 N.Y.S.2d 138 (2008), a corporation and its sole shareholder were sued for specific performance for the conveyance of real property. Partial summary judgment was entered against the corporation and the shareholder on the issue of liability. The shareholder retained different counsel and successfully appealed the summary judgment against him.

---

[6] This term comes from a Tennessee case relied on by Gerber in which the court "note[d] that there are three categories of attorney's fees that may constitute damages resulting from legal malpractice: (1) 'initial fees' a plaintiff pays or agrees to pay an attorney for legal services that were negligently performed, (2) 'corrective fees' incurred by the plaintiff for work performed to correct the problem caused by the negligent lawyer, and (3) 'litigation fees,' which are legal fees paid by the plaintiff to prosecute the malpractice action against the offending lawyer. *John Kohl & Co. P.C. v. Dearborn & Ewing*, 977 S.W.2d 528, 534 (Tenn. 1998).

In an appeal of the subsequent malpractice action against the first attorneys, the appellate court found that the shareholder was entitled to recover fees paid to the successor attorneys for the successful appeal reversing the finding of personal liability against him.  The *Leach* case does not support Gerber's contention that it should be awarded attorneys' fees paid to successor attorneys to lodge an interlocutory appeal of a discovery issue without any evidence that the outcome in the underlying action would have been different had the Mitchell firm not grossly mishandled discovery.

Neither does the Ohio malpractice case cited by Gerber support its claim to recover fees as damages in this case.  In *Green v. Bailey*, 2008-Ohio-3569, a jury found that the attorney was negligent for, among other failings, not using the tools of discovery and failing to meet discovery deadlines. The jury entered a verdict for the attorney, though, finding that the attorney's negligence did not cause the clients any damage.  The clients filed a motion for new trial on their claim for successor attorney's fees.  The trial court granted the motion, citing to the comprehensive motion for reconsideration filed by the successor attorneys in the underlying action—which, though it was never ruled on, the court stated could lead to a "reasonable inference . . . that the vigorous representation by the new attorneys was beneficial" to the clients in reaching a favorable settlement four months later.  On appeal, the court reinstated the jury's verdict and entered judgment in favor of the attorney defendants.  In so doing, the appellate court stated:

> Attorney fees incurred to rectify, or to attempt to rectify, the malpractice are recoverable as indirect, or consequential, damages in a legal malpractice action, even when the rectification is achieved through a settlement. *But recovery is warranted only where the factfinder is persuaded that the fees and expenses of the successor attorney were causally related to an established cause of action for malpractice.*

*Id.* at ¶ 17 (emphasis added) (internal citations omitted.)  This tracks the law in Arkansas: to

11

establish damages proximately caused by an attorney's negligence, a plaintiff must first prove that but for the attorney's negligence, the outcome in the underlying action would have been more favorable.

Finally, Gerber cites to *Nettleton v. Stogsdill*, 387 Ill. App. 3d 743, 899 N.E.2d 1252 (2008) to support its claim for successor legal fees. In *Nettleton*, the negligence of attorney Stogsdill resulted in the dismissal of Nettleton's divorce petition. This required Nettleton to file a second petition for divorce—which was done a week after the dismissal and was also filed by Stogsdill. A couple of months after the second petition was filed, Stogsdill's representation of Nettleton was "terminated."[7] Nettleton was represented by four other law firms during the two years it took to reach a settlement in the divorce proceeding.

In the subsequent malpractice action against Stogsdill, the trial court entered summary judgment for the attorney, finding that Nettleton had not presented evidence of actual damage because she did not show that but for Stogdill's negligence, she would have received a larger award. The appellate court reversed, holding that "a legal malpractice plaintiff may recover as actual damages the attorney fees incurred as a result of the defendant's malpractice, so long as the plaintiff can demonstrate she would not have incurred the fees in the absence of the defendant's negligence." *Id.* at 753, 1261. In so finding, the court emphasized that "[a]s a result of defendants' alleged malpractice, a directed finding was entered on plaintiff's first dissolution petition. Thus, to remedy defendants' negligence and to obtain a divorce, plaintiff was required to incur attorney fees to file and prosecute the second dissolution petition." *Id.* at 750, 1259. As the Mitchell firm points out, Gerber was not "required" to incur successor attorneys' fees to appeal

---

[7] The opinion does not indicate at whose initiative the attorney-client relationship was terminated.

the trial court's discovery orders, it chose to do so.  Not only was the appeal not required, it was unsuccessful.  While it failed in its attempt to claw back privileged documents, Gerber offered no evidence that the production of any privileged document under the Mitchell firm's watch made a difference to the outcome in the underlying action.

To prevail on a legal malpractice claim in Arkansas, a plaintiff is required to establish that but for the negligence of the attorney, the result in the underlying action would have been different. *Evans*, *supra*.  The facts of this case fit squarely with a logical application of Arkansas law, and the other-jurisdiction cases cited by Gerber do not lend support to its argument that a different burden of proof should apply in this case. The Mitchell firm's motion for summary judgment on the issue of proximate cause is granted.

### Defendants' Motion for Leave to File an Amended Answer and Counterclaim

Defendant's motion for leave to file an amended answer and counterclaim seeking to recover for unpaid fees it claims it is owed by Gerber is untimely.  The case has been pending for over a year and a half, and the discovery cutoff date has passed.  Therefore, this motion is denied.

### Conclusions

For the reasons stated above, Defendants' Motion for Summary Judgment (Doc. Nos. 11, 29) is GRANTED; Defendants' Motion in Limine (Doc. No. 35) is MOOT; and Defendants' Motion for Leave to File an Amended Answer and Counterclaim (Doc. No. 44) is DENIED.

IT IS SO ORDERED this 31st day of August, 2020.

_____
James M. Moody Jr.
United States District Judge